UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL A. HOLMBERG,

    Plaintiff,

 v.

ELDON VAIL, DAN PACHOLKE, PATRICK GLEBE, WANDA McRAE, CHERYL SULLIVAN, and JOHN AND JANE DOES 1-5,

    Defendants.

No. C11-5449 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for: January 27, 2012**

Before the Court is the Motion for Judgment on the Pleadings of Eldon Vail, Dan Pacholke, Patrick Glebe, Wanda McRae, and Cheryl Sullivan. ECF No. 16. Plaintiff Michael Holmberg filed a response with 62 pages of attachments. ECF No. 17. Defendants filed a reply and motion to strike Plaintiff's attachments pursuant to Fed. R. Civ. P. 12(d). Plaintiff filed a "surreply" asking the Court to assess Rule 11 sanctions against Defendants and their counsel. ECF No. 19. Defendants filed a reply. ECF No. 20. The undersigned recommends that Defendants' motion be granted except as to Count IV of Plaintiff's Complaint (claiming retaliation), which was not addressed in Defendants' motion. The undersigned further recommends that Defendants' motion to strike be granted and that Plaintiff's motion for sanctions be denied.

**PLAINTIFF'S COMPLAINT**

In Count I, Plaintiff alleges that five articles of his mail were rejected by the McNeil Island Corrections Center mailroom between September 2005 through November 2007 and that

REPORT AND RECOMMENDATION - 1

mail containing the VA disability checks of another inmate (Mr. Polston) was wrongfully rejected by the SCCC's mailroom staff. ECF No. 5 at 8-9. Defendants argue that these claims must be dismissed because they are barred by the statute of limitations and Plaintiff lacks standing to assert the legal rights of others. ECF No. 16 at 5-6. Plaintiff concedes that the allegations were included for informational purposes only as "habit or routine practice" evidence. Plaintiff confirms that his case involves the restriction of his outgoing mail "on three separate occasions: October 11, 2010, November 15, 2010, and January 7, 2011." ECF No. 17. Accordingly, statements contained in Count I are viewed as informational only.

In Count II, Plaintiff alleges that on October 10, 2010, he submitted a postage transfer form to access his indigent postage account to mail an article of personal mail. The postage transfer form was returned to him on October 11, 2010 with the notation "Over Indigent Amount," because he had previously sent out mail that week and would exceed his indigent postage allotment with this second request. Plaintiff contends that this practice is contrary to Department of Correction (DOC) Policy 450.100 (XI)(F). He also alleges that he received no written "rejection" when the postage transfer form was returned. Although not clearly stated on the face of his Complaint, the copies of Grievance (Log. No. 1021670) attached to Plaintiff's Complaint, show that SCCC's mailroom process for indigent postage was governed by the unit store schedule, which operated on a 9 to 12 day cycle, whereas DOC 450.100 XI(F) directed that indigent prisoners should have 5 pre-franked envelopes ($2.40) available to them every 7 days. ECF No. 5-3 at 40. According to mailroom records, Plaintiff sent out a letter on October 3, 2010 (which was processed on October 5, 2010) for $1.22. *Id.* In Plaintiff's Level III appeal, SCCC management agreed that the mailroom should follow a calendar week system to comply with DOC policy. Plaintiff was given an apology and was assured that a system would be developed

REPORT AND RECOMMENDATION - 2

whereby indigent prisoner mail would follow the calendar week in the future. ECF No. 5-3 at 40.

In Count III, Plaintiff alleges that on November 14, 2010, he submitted a postage transfer form to access his indigent postage account to mail an article of personal mail. The postage transfer form was returned to him on November 15, 2010 because he had exceeded his indigent postage allotment for the week. Plaintiff again alleges that he had not exceeded his weekly allotment, that this rejection is contrary to DOC Policy 450.100 (XI)(F), and that he was entitled to a written notice of this "rejection" of his mail. ECF No. 5 at 10.

In Count IV, Plaintiff alleges that he submitted a Money Transfer form on November 21, 2010 for $4.82 to pay for a Public Disclosure Request and that on November 30, 2010, a check was issued in that amount. After some time on January 12, 2011 he made inquiry to Defendant Sullivan requesting the date the check was mailed and again on January 21, 2001, he sent a letter of inquiry to Defendant Vail. On January 25, 2011, Plaintiff received a response from Defendant Sullivan that SCCC Accounting "maintained the record in question." On January 26, 2011, Plaintiff wrote to Associate Superintendent Jackson and received a response from S. McCann that it was in the "mailroom." On February 7, 2011, Mr. Wilen responded that the check had not been received or cashed by DOC. On February 14, 2011, Plaintiff filed a grievance claiming that his check had been restricted in retaliation because he had filed grievances against Defendants Glebe and Sullivan for rejecting his outgoing mail. On March 21, 2011, Defendant Glebe told him that the postal service had lost his check. Defendant Pacholke denied Plaintiff's appeal and refused to take corrective or disciplinary action. ECF No. 5 at 10-11.

In Count V, Plaintiff alleges that on January 5, 2011, he submitted a postage transfer form requesting to access his indigent postage account to mail an article of personal mail. The

REPORT AND RECOMMENDATION - 3

mail was returned to him on January 7, 2011 because he had exceeded his indigent postage allotment for the week. Plaintiff alleges that he had not exceeded his allotment for the week and that he was entitled to receive notice of this "rejection" of his mail. ECF No. 5 at 12. Plaintiff mailed a complaint to Defendant Vail alleging that Defendant Glebe's policy of restricting his mail was illegal. *Id.* On February 15, 2011, Defendant McRae, responded for Defendant Vail, upheld the mail restriction and refused to take corrective or disciplinary action. *Id.*

Plaintiff claims that his Fourteenth Amendment rights to due process were violated when his mail was rejected and that his First Amendment rights were violated when his Public Disclosure check was withheld in retaliation for filing grievances against Defendants Glebe and Sullivan for their "illegal policy and practice of returning [his] outgoing mail." ECF No. 5 at 13-14.

Plaintiff claims that Defendants Pacholke and Glebe failed to take corrective or disciplinary action and established "a turn a-blind-eye policy" to retaliation and that Defendants Vail and McRae failed to correct or discipline Defendants Glebe and Sullivan. ECF No. 5 at 15. Plaintiff concedes that these claims may be dismissed for failure to plead personal participation. ECF No. 17.

**STANDARD OF REVIEW**

The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as for a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Ludahl v. Seaview Boat Yard, Inc.*, 869 F. Supp. 825, 826 (1994). A judgment on the pleadings should be granted "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Company, Inc.*, 896 F.2d

REPORT AND RECOMMENDATION - 4

1542, 1550 (9th Cir. 1990). In considering the motion, the court "must assume that the material facts as pleaded are true, and the inferences drawn from these facts are construed in favor of the party opposing the motion." *Ludahl*, 869 F. Supp. at 826. Where a plaintiff is *pro se,* his allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner,* 404 U.S. 519 (1972), *reh'g denied,* 405 U.S. 948 (1972). However, while the court can liberally construe a *pro se* plaintiff's complaint, it cannot supply an essential fact that the plaintiff has failed to plead. *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982)).

Normally, in reviewing the complaint under this standard, a court may look only at the face of the complaint to decide the motion. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). If the plaintiff physically attaches documents as part of his complaint, the court may consider those documents with the complaint on a motion to dismiss without converting the motion into a motion for summary judgment. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001). When considering a motion to dismiss for failure to exhaust a court may look outside the pleadings to determine whether the issue has been exhausted. *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in

REPORT AND RECOMMENDATION - 5

the complaint are true (even if doubtful in fact)." *Id*. at 555. Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Two working principles underlie the Supreme Court's decision in *Twombly*; first, the tenant that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (citing *Twombly*, 550 U.S. at 555). Second, determining whether a complaint states a plausible claim is context-specific, requiring the viewing court to draw on its own experience and common sense. *Id*. (citing *Twombly*, 550 U.S. at 556). A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S.C. at 1948-51.

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6), all factual allegations set forth in the complaint are "taken as true." *Epstein v. Washington Energy Co*., 83 F.3d 1136, 1140 (9th Cir.1996). Rule 8(a) (2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555-56, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). To survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965.

REPORT AND RECOMMENDATION - 6

**MOTIONS TO STRIKE AND FOR SANCTIONS**

**A.     Motion to Strike**

In his response to Defendants' motion for judgment on the pleadings, Plaintiff attached 61 pages of exhibits. According to Plaintiff these are "additional evidence of the Defendants and their agents continuing to subject [him] to arbitrary and illegal acts involving the mishandling of [his] incoming and outgoing mail." The exhibits include declarations, portions of DOC policies, correspondence, grievances, offender kites, and Plaintiff's correspondence, all of which post-date the events in the complaint. Defendants move to strike these exhibits pursuant to Fed. R. Civ. P. 12(d).

"A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials." *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir.1996). *See* Fed.R.Civ.P. 12(d). However, it is up to the Court to decide whether to consider or reject such material.

The Court declines to consider the materials submitted with Plaintiff's response because they are immaterial to the issues raised in his complaint. As noted above, Plaintiff confirms that his case involves the restriction of his outgoing mail on the three occasions plead in his complaint: October 11, 2010, November 15, 2010, and January 7, 2011. ECF No. 17. Evidence relating to other mail rejections is not relevant to a determination of whether the Defendants' interference with his outgoing mail on those dates was wrongful or unconstitutional.

Accordingly, it is recommended that Defendants' motion to strike be granted.

**B.      Plaintiff's Motion for Sanctions**

In a pleading entitled "surreply" Plaintiff asks the Court to sanction Defendants and their counsel for making false statements of fact and law in the arguments set forth in their motion.

Rule 11 requires that an attorney sign a pleading, motion, or other paper, only if, "to the best of [his] knowledge, information and belief formed after reasonable inquiry[,] it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. . . ." Fed. R. Civ. P. 11. The Ninth Circuit has held that the Rule 11 standard is identical to the standard used to determine whether or not a prevailing civil rights defendant is entitled to attorneys' fees. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986), *abrogated on other grounds*, 496 U.S. 384 (1990). To award attorneys' fees under the civil rights acts, the district court must find that the action was "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978). A pleading, motion or other paper well grounded in fact and law cannot be sanctioned regardless of subjective intent. *Zaldivar*, 780 F.2d at 832. Under this approach, a pleading or motion is not "warranted by law" where no "plausible, good faith argument can be made by a competent attorney' in support of the proposition asserted." *Paciulan v. George*, 38 F.Supp.2d 1128, 1144 (N.D. Cal. 1999) (quoting *Zaldivar*, 780 F.2d at 833)).

Plaintiff makes no showing that Defendants' motion is not warranted by law. Instead, he re-argues many of the arguments set forth in his response, he contends that Defendants misstate case law, he disagrees with Defendants' position on whether he was entitled to a specific process and whether he in fact received the entitled due process, and he disagrees with Defendants' characterization of his indigent postage claim. While Plaintiff may disagree with Defendants' arguments, this is not a basis for Rule 11 sanctions. He has failed to provide the Court with any

REPORT AND RECOMMENDATION - 8

evidence that the arguments submitted by Defendants were frivolous, unreasonable or without foundation. Therefore, his motion for sanctions should be denied.

## DISCUSSION

**A.     Exhaustion of Remedies – Counts III and V**

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

The United States Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. *Id*. at 741 n. 6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *Woodford v. Ngo*, 548 U.S. 81, 90-93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. *See Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Wyatt v. Terhune*, 315 F.3d

REPORT AND RECOMMENDATION - 9

1108, 1117-19 (9th Cir.2003). The defendants bear the burden of raising and proving the absence of exhaustion. *Wyatt*, 315 F.3d at 1119.

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust - a procedure closely analogous to summary judgment - then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record." *Id*. at 1120 n. 14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Id*. at 1120. *See also Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

There is a grievance procedure available to inmates who are incarcerated in DOC institutions. ECF No. 16, Exh. 1 (Declaration of Tamara J. Rowden). The Washington Offender Grievance Program (OGP) has been in existence since the early 1980's and was implemented on a Department-wide basis in 1985. *Id.*, ¶ 3. Under Washington's OGP, an offender may file a grievance over a wide range of aspects of his/her incarceration. *Id.* ¶ 4. Inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions. An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative

REPORT AND RECOMMENDATION - 10

segregation placement or retention; 5) classification/unit team decisions; 6) transfers; 7) disciplinary actions; and 8) several other aspects of incarceration. *Id.*

The Washington grievance system provides a wide range of remedies available to inmates. These remedies include: 1) restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure. *Id.*

The grievance procedure consists of four levels of review. *Id.* Level 0 is the complaint or informal level, at which the grievance coordinator pursues informal resolution. Level I grievances are grievances against policy, procedure, or other offenders, and grievances processed as emergencies. The local grievance coordinator is the respondent at Level I. Offenders may appeal a Level I response to Level II. All appeals and initial grievances received at Level II are investigated, with the prison superintendent being the respondent. Offenders may appeal all Level II responses except emergency grievances to Level III at Department Headquarters in Olympia, where they are reinvestigated. Administrators are the respondents at Level III. *Id.* If a grievance is found not to be grievable, an offender has 5 days to appeal that decision to the Grievance Program Manager. *Id.,* ¶¶ 9, 10. The Grievance Program Manager has the authority to reverse a decision of non-grievability. *Id.*, ¶ 9.

Under Grievance Log I.D. Nos. 1021670 and 1102968, Plaintiff fully exhausted his administrative remedies. ECF No. 16 (Rowden Decl.) at ¶ 13. The grievance records reflect, however, that Plaintiff did not initiate a grievance complaint related to the allegations set forth in Counts III and V. *Id.*, ¶ 14. Plaintiff admits that he did not file formal grievances pursuant to the DOC grievance policy. ECF No. 17. He argues, however, that he sent complaints to

REPORT AND RECOMMENDATION - 11

Defendants Glebe and Vail to put them on "notice" and that because the issues in Count III and V were the same as those he had previously grieved in Grievance Log ID No. 1021670, he was not required to file a separate grievance. ECF No. 17 at 14. Plaintiff is incorrect.

Plaintiff is no stranger to the grievance system. He does not nor can he argue that he is unaware or confused on the procedures related to the filing of grievances or that he is not aware that he is required to file separate grievances for each of his claims. In fact, he treats each time his mail was rejected as a separate claim in his complaint.

An offender must procedurally exhaust his claims by complying with the system's critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). Notice alone is insufficient because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance" and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.*; *see also Macias v. Zenk*, 495 F.3d 37 (2nd Cir. 2007) (Federal prisoner did not procedurally exhaust his prison remedies by filing administrative tort claims and making informal complaints to prison officials, even if his actions put prison officials on notice, where administrative remedy system was not so confusing.). The exhaustion doctrine also recognizes the notion that an agency ought to have an opportunity to correct its own mistakes before it is haled into court. *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. *Id.* (citing *Parisi v. Davidson*, 405 U.S. 34, 37 [1972]). Plaintiff failed to follow the procedural requirements for filing a grievance. Clearly Plaintiff is aware of those procedures as he had previously properly filed and exhausted other grievances. *See* ECF No. 5; ECF No. 17 at 13-14.

REPORT AND RECOMMENDATION - 12

"When a plaintiff has filed a 'mixed' complaint and wishes to proceed with only the exhausted claims, a district court should simply dismiss the unexhausted claims when the unexhausted claims are not intertwined with the properly exhausted claims." *Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005) (three claims relating to placement in administrative segregation where only one was fully exhausted were not "intertwined").

Here, Plaintiff alleges that his mail was wrongfully "rejected" on three separate occasions "on the false premise" that he had exceeded his allotment of indigent postage for the week. While the overarching issues may be the same, the claims are not "intertwined" and do not excuse Plaintiff from having to first file a grievance on each of his claims. Because Plaintiff failed to take the most minimal step to file a grievance, the DOC was deprived of the opportunity of investigating the issue. As noted, Plaintiff himself treats each of these claims as separate and distinct in his complaint and treats each as a separate count. ECF No. 5.

Plaintiff failed to pursue the grievance process on Counts III and V and, therefore, must be dismissed without prejudice.

**B.     Personal Participation of Defendants**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must

REPORT AND RECOMMENDATION - 13

be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. The plaintiff may have suffered harm, even due to another's negligent conduct, but that does not in itself necessarily demonstrate an abridgement of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965, 967 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged. *Id.* "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

Defendants argue that Plaintiff has failed to allege the personal participation of any of the Defendants in Count I, Defendants Patrick Glebe and Dan Pacholke in Count IV, and Defendants Vail and McRae in Count V. ECF No. 16. Plaintiff concedes that he has failed to do so. ECF No. 17. Accordingly, it is recommended that these claims be dismissed against these individuals. As discussed above, the undersigned is recommending that Claim V be dismissed without prejudice because Plaintiff has failed to exhaust this claim.

## B. Retaliation

In Count IV of his Complaint, Plaintiff alleges that he submitted a Money Transfer form to pay for a Public Disclosure Request and although the SCCC accounting department issued a check in the amount, his request was never processed. Plaintiff claims this was in retaliation because he had filed grievances against Defendants Glebe and Sullivan for rejecting his outgoing mail. ECF No. 5 at 9-12.

Defendants did not move for judgment on the pleadings on Plaintiff's retaliation claim and therefore, this claim remains for later determination.

## C. Due Process

In Count II of his Complaint, Plaintiff alleges that on October 10, 2010, he submitted a postage transfer form asking to use his indigent postage allotment for the week to mail an article of personal mail but his request was refused because he had already used a portion of his weekly allotment and the October 10th request would cause him to exceed his weekly allotment. The postage transfer form was returned to him marked "Over Indigent Amount". ECF No. 5 at 9, ¶ 16; ECF No. 5-3 at 40. Although not clearly stated on the face of his Complaint, Grievance Log No. 1021670 and Level II and III appeals of that grievance (copies of which are attached to the Complaint) reflect that the SCCC mailroom process for indigent postage requests was governed by the unit store schedule. This schedule operated on a 9 to 12 day cycle. On the other hand, DOC 450.100 XI(F) directs that indigent prisoners should have 5 pre-franked envelopes ($2.40) available to them every *week*. ECF No. 5-3 at 40. According to the Level III appeal of Plaintiff's grievance, SCCC management agreed with Plaintiff that the mailroom should follow a calendar week system to meet DOC policy and Plaintiff was assured a system will be developed

REPORT AND RECOMMENDATION - 15

to address the matter in the future. ECF No. 5-3 at 40; ECF No. 16-1 (Declaration of Ohad M. Lowy), Attachment A (DOC Policy 450.100).[1]

Thus, it is clear from Plaintiff's allegations that he attempted to send out two personal letters and by his reckoning, he sent the first on October 3rd and the second on October 10th, so that there should not have been any issue with exceeding his indigent postage account. Even assuming these facts to be true, the Court finds there to be no constitutional violation. The allegations set forth in Plaintiff's complaint simply do not set forth a claim of due process violation. Plaintiff was not simply sending out mail that was being rejected. He was asking permission to access a postage account in order to send out personal letters.

Plaintiff has no constitutional right to free postage for non-legal mail. *Hersberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994); *Van Poyck v. Singletary*, 106 F.3d 1558, 1559-60 (11th Cir. 1997); *Johnson v. Goord*, 445 F.3d 532, 534 (2nd Cir. 2006). Plaintiff does not allege that he was being prevented from mailing his personal letters or from accessing his indigent postage account; he merely alleges that he was told that he had insufficient funds to access his account *that week*. Even if someone in the mailroom was incorrect about the amount of funds that were available to Plaintiff or was using the wrong calendar, there is no constitutional violation. Plaintiff provides no authority for finding that a delay of a few days in sending a personal letter constitutes a violation of the Fourteenth Amendment.

---

[1] The court may properly consider documents relating to DOC Policy 450.100 because Plaintiff relies on DOC Policy 450.100 as the basis of his claims and does not question their authenticity. *See, Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006). The purpose of this rule is to prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which his claims are based. *Id.* In considering such a writing, the court does not convert the motion into one for summary judgment under Rule 56. *Parrino*, 146 F.3d at 706 n.4.

REPORT AND RECOMMENDATION - 16

Even if the Court is to assume that the denial of access to the indigent postage account was a retention of outgoing mail, a brief delay in the processing of an inmate's mail even without notice to the inmate is not a violation of the Fourteenth Amendment. *See, e.g., Sorrels v. McKee*, 290 F.3d at 972 (incoming gift publication sent to prisoner rejected by prison officials and sent to prisoner's family one month after receipt not a violation of due process). Plaintiff admits that when his mail was returned to him, he was given the reason that he had exceeded his allotment of indigent postage for the week as the reason his mail had not been sent. ECF No. 5-3 at 14 (Grievance Log. No. 1021670 "with 'Over Indigent Amount' written on the postage transfer form"). Additionally, Plaintiff filed a grievance and was given the opportunity to protest the return of his mail to an official other than one who returned his mail. ECF No. 5 at Attach. 1 at ¶ 53. Therefore, it is undisputed that, even if he was entitled to due process, Plaintiff received those minimal safeguards to which he was entitled. The "minimum procedural safeguards" are: (1) notifying the inmate that the mail was seized; (2) allowing the inmate a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the one who seized the mail. *Procunier v. Martinez*, 416 U.S. 396, 417-18, 94 S.Ct. 1800 (1974) *overruled on other grounds by Thornburgh*, 490 U.S. 401, 413-14 (1989). Finally, Plaintiff alleges that Defendants were acting contrary to DOC Policy 450.100 (XI)(F). However, responses to Plaintiff's grievance appeals reflect that after Plaintiff grieved the mailroom's use of the "unit store schedule," SCCC management addressed the issue and corrected it so that the mailroom process for indigent offender purposes would follow a work or calendar week to meet DOC policy. ECF No. 5-3 at 40.

Assuming all the facts pleadings in Plaintiff's complaint as true and drawing all inferences in his favor, the undersigned finds that there are no material issues of fact remaining

REPORT AND RECOMMENDATION - 17

to be resolved and that Defendants are entitled to judgment as a matter of law on Count II of his Complaint. Count II should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the undersigned recommends the following:

(1) Defendants' motion for dismissal should be **GRANTED as to** Counts I and II **with prejudice**; Counts III and V **without prejudice for failure to exhaust;** and Count IV as to Defendants Patrick Glebe and Dan Pacholke **with prejudice**.

(2) Defendants' motion to strike should be **GRANTED** and Plaintiff's motion for sanctions **DENIED**.

(3) Defendants' motion for dismiss should be **DENIED as to** Count IV of Plaintiff's Complaint and this matter re-referred to the undersigned for further proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 27, 2012,** as noted in the caption.

**DATED** this 3rd day of January, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18