1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL HOLMBERG,

                              Plaintiff,

        v.

ELDON VAIL, DAN PACHOLKE,
PATRICK GLEBE, WANDA McRAE,
CHERYL SULLIVAN, and JOHN AND
JANE DOES 1-5,

                              Defendants.

No. C11-5449 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  September 28, 2012**

        Before the Court is the Motion for Summary Judgment of Defendant Cheryl Sullivan.

ECF No. 34.  Plaintiff Michael Holmberg filed a response claiming that he cannot effectively

respond to the motion due to outstanding discovery and an inability to properly authenticate

documents.  ECF No. 37.  He also filed a motion to compel.  ECF No. 39.  That motion has been

denied under separate Order.

        Having reviewed the motion and balance of the record, the Court recommends that

Defendant Sullivan's motion for summary judgment be granted.

## BACKGROUND

        Plaintiff Michael Holmberg is an inmate in the Washington Department of Corrections

(DOC) and is currently incarcerated at the Stafford Creek Corrections Center (SCCC).  ECF No.

5, p. 2.  He filed this 42 U.S.C. § 1983 action against Defendants Eldon Vail, Dan Pacholke,

REPORT AND RECOMMENDATION - 1

1   Wanda McRae, Patrick Glebe, and Cheryl Sullivan alleging civil rights violations.   *Id.*

2   Defendants moved to dismiss all of Plaintiff's claims except those against Defendant Sullivan.

3   ECF No. 16.  The motion was granted.  ECF Nos. 22 and 23.

4        In his sole remaining claims, Mr. Holmberg alleges that Defendant Sullivan retaliated and

5   unlawfully restricted his outgoing mail, which contained a check for the payment of a public

6   disclosure request.  ECF No. 5, pp. 14-15, ¶¶ 41-42 (ECF pagination).  Specifically, he alleges

7   that on November 30, 2010, Defendant Sullivan restricted his outgoing mail (1) without issuing

8   any procedural protections in violation of his right to due process under the Fourteenth

9   Amendment, (2) in retaliation for Plaintiff's grievance and complaints against the SCCC

10  mailroom in violation of his First Amendment rights.  *Id.*

11

12  **STANDARD OF REVIEW**

13       The Court shall grant summary judgment if the movant shows that there is no genuine

14  dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

15  Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence

16  of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

17  1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce

18  any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

19  absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato*

20  *Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local

21  rules in opposing a motion for summary judgment does not relieve the moving party of its

22  affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v.*

23  *Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

24

25

26

REPORT AND RECOMMENDATION - 2

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

### STATEMENT OF FACTS

All incoming and outgoing mail at SCCC is processed through the mail room.  Among the outgoing mail handled by mailroom staff are offenders' payments to the Public Disclosure Unit (PDU) for documents sought as part of public disclosure requests.  ECF No. 34, Exh. 1

REPORT AND RECOMMENDATION - 3

(Declaration of Cheryl Sullivan), ¶ 5, Attach A (Policy Directive 450.100, effect. September 1, 2010).  Before being mailed out, offenders' outgoing checks are handled by the financial department, located in D-Building.  *Id.*  When an offender requests that a check be issued, he does so through his counselor using a "request to transfer funds" form.  *Id.;* Exh. 2 (Declaration of Ruth Redding).  After the appropriate signatures are obtained, the request to transfer funds form is forwarded to the business office along with an envelope, which is provided by the offender.  *Id.*  When the business office places the check in the envelope, it seals the envelope prior to placing it at a drop off location.  *Id.*  The envelope is then placed in an inner-office envelope which is placed in a bin in the business office for items to be dispersed in the facility.  *Id.*  That bin is then taken at the end of the day to a centralized location in D-Building, and the items are dispersed to the appropriate mail boxes.  *Id.*

Because the business office seals any checks it issues in the envelope, the business office is responsible for tracking those checks when they are issued.  ECF No. 34, Exh. 1 (Sullivan Dec.), ¶ 5; *see also* Attach. C.  The mailroom does not keep a record of any checks or monies that come in the outgoing mail, because it has no way to determine what is in the envelopes.  *Id.*  The mailroom does keep track of checks or monies that come through incoming mail, as non-legal mail is opened in the mailroom, and therefore it can be determined what is in the envelopes.  *Id.*

The various departments in D-Building place all of their outgoing mail into one container for pickup by mailroom staff.  ECF No. 34, Exh. 1 (Sullivan Decl.), ¶ 4.  A mailroom staff member then takes the combined mail, places it into a large bin, brings it to the mailroom, and processes it for sending.  *Id.*  Mailroom staff weighs the envelopes to determine whether they have sufficient postage, and add postage to staff mail if it does not.  *Id.*  On average, the

REPORT AND RECOMMENDATION - 4

mailroom processes approximately 935 pieces of outgoing mail per day. The 935 pieces includes outgoing mail for both staff and offenders. *Id.*

Mr. Holmberg alleges that, on or about November 21, 2010, he submitted a Money Transfer Form to receive a check with which to pay the costs associated with a public disclosure request. ECF No. 5, pp. 5-6, ¶ 21. On November 30, 2010, Ruth Redding, Fiscal Technician 2, processed Mr. Holmberg's request to transfer funds in the amount of $4.82. ECF No. 34-1, Exh. 2 (Declaration of Ruth Redding). The check number was 45909. After the check was printed and the appropriate signatures gathered, Ms. Redding placed the check in the envelope provided, and sealed it. *Id.* The envelope was placed in an inner-office envelope which was placed in a bin in the business office for items to be dispersed in the facility. *Id.* That bin was then taken at the end of the day to a centralized location in D-Building, and the items would be dispersed to the appropriate mail boxes. *Id.*

Defendant Sullivan received a kite dated January 4, 2010, written by Mr. Holmberg that was forwarded from the business office. ECF No. 34-1, Exh. 1 (Sullivan Decl.), ¶ 7. In his kite, Mr. Holmberg requested the date that check #45909 in regards to PDU-12487 was sent. *Id.* Until she received the kite, Defendant Sullivan was unaware of any public disclosure request Mr. Holmberg had filed. *Id.* As the business office would know when the check was issued, and there was no way for the mail room to know what is contained in envelopes after they are sealed, Defendant Sullivan returned the kite to the business office to be answered. *Id.* It appears that the kite was sent to the mailroom again and then returned to the business office. Glen Harp replied to Mr. Holmberg's request as follows:

REPORT AND RECOMMENDATION - 5

This kite was received in the business office on 1-6-11 and forwarded to the mailroom at that time.  It was returned to the business office on 1-10-11.  The business office usually puts the checks in the mailroom mail box on the day after the check.

ECF No. 34-1, Exh. 1 (Sullivan Decl.), Attach. B.

On or about January 12, 2011, Mr. Holmberg submitted another inquiry to Defendant Sullivan regarding the date on which the check was mailed.  ECF No. 5, at 6, ¶ 23; ECF No. 34-1, Exh. 1 (Sullivan Decl.), Attach. C.  Defendant Sullivan responded that the record-keeping for public disclosure checks was the responsibility of SCCC's accounting department.  *Id.*

One week later, on February 14, 2011, Mr. Holmberg filed a grievance alleging that his check was illegally obstructed in retaliation for previous grievances that he had filed against the mailroom.  ECF No. 5, at 6-7, ¶ 28.  However, the grievance was dismissed because SCCC's Accounting Department had been made aware that the check was not received and mailed a replacement check to the PDU.  *See* ECF No. 5, Exhibit QQ to Plaintiff's Complaint (Initial Grievance, Log ID Number 1102968); ECF No. 34-1, Exh. 1 (Sullivan Decl.), Attach. D.  Mr. Holmberg appealed this dismissal.  His appeal was denied because an internal investigation conducted by Defendant Sullivan and other staff, showed that mailroom staff had not interfered with his check and the mailroom staff does not control what happens to a check once it is picked up by the Postal Service.  *Id.* Exhibit SS to Plaintiff's Complaint (Appeal to Level II, Log ID Number 1102968); ECF No. 34-1, Exh. 1 (Sullivan Decl.), Attach. D.

Defendant Sullivan states that, so far as she can remember, she did not handle any of Mr. Holmberg's mail any point during the period at issue because she does not normally handle offenders' mail.  She did not open any of Mr. Holmberg's outgoing mail that came through the business office.  She did not interfere with Mr. Holmberg's mail nor is she aware of what

happened to it.  As the letter at issue would have come into the mailroom sealed, she would have had no idea what the letter contained.  At no point would she have ever directed any mailroom worker to interfere with, reject, or otherwise treat Mr. Holmberg's mail differently in any way.  ECF No. 34-1, Exh. 1 (Sullivan Decl.), ¶ 10.

Mr. Holmberg does not dispute the foregoing facts.  He merely claims that he cannot effectively respond to or oppose Defendant Sullivan's motion without an opportunity to authenticate his evidence or without retrieving outstanding discovery.  ECF No. 37, p. 3.  As noted above, Mr. Holmberg's separately filed motion to compel (ECF No. 39) was denied.  The issue before the Court in the motion to compel was the cost of producing the discovery, not whether Mr. Holmberg needed additional time or materials to dispute the facts raised here.  In fact, although Mr. Holmberg vaguely suggests that he may need additional discovery materials, he fails to indicate how any such materials would contradict Defendant Sullivan's facts nor does he identify, with specificity, what those materials are and how they relate to his remaining claims.

The Court also rejects Mr. Holmberg's suggestion that the cost of discovery somehow hampers his ability to authenticate exhibits.  Exhibits are authenticated by declarants who are qualified to testify as to their authenticity under Federal Rule of Evidence 901(b)(1).  It appears that the majority of the exhibits Mr. Holmberg refers to were authenticated through Defendant Sullivan's declaration that is attached to her motion for summary judgment.  Other exhibits include letters and kites that Mr. Holmberg wrote, which he could easily authenticate through his own declaration or whose authenticity would not be disputed.

REPORT AND RECOMMENDATION - 7

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, and (2) and the defendant's conduct must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds; Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That the plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965, 967 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged. *Id.* Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

### A.      Retaliation

In order to state a claim of retaliation, a prisoner must allege that (1) that he was subjected to adverse action; (2) the adverse action was imposed because of certain conduct; (3)

REPORT AND RECOMMENDATION - 8

the conduct that gave rise to the adverse action is legally protected; (4) the adverse action chilled

the prisoner's speech; and (5) the adverse action did not advance a legitimate penological goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  In addition, a plaintiff must show that

the retaliation was the substantial or motivating factor behind the conduct of the prison official.

*Mt. Health City Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87, 97 S. Ct. 568, 50 L. Ed. 2d 471

(1976); *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).  Findings of causation and

adverse motive require threshold proof of a defendant's knowledge of a plaintiff's protected

activity.  *Clark County School District v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508 (2001);

*Raad v. Fairbanks North Star Borough School Dist.,* 323 F.3d 1185, 1198 (9th Cir. 2003) ("Raad

fails to point to any evidence in the record supporting her assertion that Layral and Thibodeau,

the particular principals who made the allegedly retaliatory hiring decisions, in fact *were* aware

of her complaints.  Without any such evidence, there is no genuine issue of material fact."); *see*

*also Maarouf v. Walker Mfg. Co., Div. of Tenneco Auto., Inc.*, 210 F.3d 750, 755 (7th Cir. 2000)

(observing that the "critical issue" was "whether the person who made the decision to terminate

his employment was aware of the discrimination allegations at the time").  Knowledge must be

actual knowledge and cannot be imputed.  *See Raad*, 323 F.3d at 1197-98.  *See also Pressley v.*

*Haeger*, 977 F.2d 295, 297 (7th Cir.1992) ("An empty head means no discrimination. There is no

'constructive intent,' and constructive knowledge does not show actual intent.").

Because claims of retaliation are easy for inmates to allege, courts examine such claims

with skepticism to avoid interfering too much with prison operations.  *See Canell v. Multnomah*

*County*, 141 F. Supp. 2d 1046, 1059 (D. Or. 2001) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th

Cir. 1994)).  Further, courts should review prisoner retaliation claims in light of the United States

Supreme Court's "disapproval of excessive judicial involvement in day-to-day prison

REPORT AND RECOMMENDATION - 9

management." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  Timing alone cannot support a claim for retaliation unless the complaint contains other factual material to support the inference of retaliatory motive, because an inmate that has filed a grievance is still subject to standard prison practices after the filing of a grievance.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

Mr. Holmberg has provided no evidence that Defendant Sullivan was aware of the existence of outgoing mail containing the public disclosure check.  The record reflects that the check was sealed in an envelope at the business office.  The envelope was then placed in an inner-office envelope and then in a bin in the business office for items to be dispersed in the facility. That bin was then taken at the end of the day to a centralized location in D-Building, where the envelope would be placed in a mail box to be collected by the mailroom staff.  The business office does not give the mailroom an accurate account of what they are actually mailing out.  ECF No. 34-1, Exhs. 1 and 2 (Sullivan and Redding Decls.),

Thus, the evidence does not establish that Defendant Sullivan ever came across the envelope that contained Mr. Holmberg's check.  Defendant Sullivan also testified that even if she had come across the envelope, she could not have been aware of its contents, because she did not open, or otherwise interfere or direct her subordinates to interfere with Mr. Holmberg's mail in any way.  ECF No. 34-1, Exh. 1 (Sullivan Decl.), ¶¶ 7, 10.   Mr. Holmberg has alleged no facts to contradict Defendant Sullivan's testimony.  In his complaint, he alleges only that Defendant Sullivan restricted his mail in retaliation for his various grievances against the mailroom.  ECF No. 5, at 9, ¶ 42.

The evidence reflects that Defendant Sullivan had nothing to do with the outgoing envelope that contained the PDU check.  Therefore, it cannot be said that she interfered with his

REPORT AND RECOMMENDATION - 10

1   outgoing mail in retaliation for his grievance against the mailroom and Defendant Sullivan's

2   motion for summary judgment on the retaliation claim should be granted.

3   **B.     Due Process**

4           Mr. Holmberg also alleges that Defendant Sullivan deprived him of the procedural

5   protections of the Fourteenth Amendment when she restricted his outgoing mail containing the

6   PDU check. ECF No. 5 at 9, ¶ 41.

7           An institution's withholding of inmate mail "must be accompanied by minimum

8   procedural safeguards." *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) (quoting *Procunier*

9   *v. Martinez,* 416 U.S. 396, 417-18 (1974), *overruled on other grounds by Thornburgh v. Abbott,*

10  490 U.S. 401, 413-14, 109 S.Ct. 1874 (1989)).  Specifically, an inmate "has a Fourteenth

11  Amendment due process liberty interest in receiving notice" that prison authorities are

12  withholding his mail. *Sorrels,* 290 F.3d at 972 (quoting *Frost v. Symington,* 197 F.3d 348, 353

13  (9th Cir. 1999)).  Department policy does provide procedural safeguards for mail, including

14  notice of rejection.  *See* ECF No. 34-1, Exh. 1 (Sullivan Decl.), Attach. A, DOC Policy

15  450.100.VII.A ("If any portion of an offender's incoming or outgoing mail is rejected, mailroom

16  staff will provide written notice to the offender and the sender using DOC 05-525 Mail Rejection

17  Notice or, for rejected eMessages, an equivalent electronic notice").  Nonetheless, without

18  providing any evidence to support the claim that his mail was restricted or rejected, such a claim

19  also cannot stand.

20          As noted above, the evidence reflects that Defendant Sullivan did not restrict Mr.

21  Holmberg's outgoing mail.  ECF No. 34-1, Exh. 1 (Sullivan Decl.).  Mr. Holmberg has not

22  provided any evidence to the contrary.  Because there is no genuine issue of material fact as to

REPORT AND RECOMMENDATION - 11

Defendant Sullivan's lack of personal involvement, she should be granted summary judgment on Mr. Holmberg's Fourteenth Amendment claim.

### CONCLUSION

For the reasons stated above, the undersigned recommends that Defendant Sullivan's motion for summary judgment (ECF No. 34) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **September 28, 2012,** as noted in the caption.

DATED this  10th   day of September, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12